1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   JUSTIN NEFF,                          No.  2:20-cv-00261-JAM-DMC

12              Plaintiff,

13        v.                               **ORDER DENYING DEFENDANTS' MOTION
                                           TO DISMISS FOR LACK OF VENUE AND**
14   TOWBIN DODGE LLC and CDK              **GRANTING DEFENDANTS' MOTION FOR**
     GLOBAL LLC,                           **TRANSFER**
15
              Defendants.
16

17        This matter is before the Court on Towbin Dodge and CDK

18   Global's ("Defendants") Motion to Dismiss and Motion to Change

19   Venue.  Towbin's Mot., ECF No. 19; CDK's Mot., ECF No. 20.

20   Justin Neff ("Plaintiff") filed an opposition, ECF No. 21, to

21   which Defendants replied, ECF No. 26-27.  After consideration of

22   the parties' written arguments on the motions and relevant legal

23   authority, the Court DENIES Defendants' Motion to Dismiss and

24   GRANTS Defendants' Motion to Transfer Venue.[1]

25   ///

26

27   _____
     [1] This motion was determined to be suitable for decision without
     oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28   scheduled for September 29, 2020.

                                    1

| | |
|---|---|
| 1 | I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND |
| 2 | Towbin Dodge is a Dodge car dealership in Henderson, Nevada. |
| 3 | First Amended Complaint ("FAC") ¶¶ 7-11, ECF No. 15.  CDK Global |
| 4 | provides sales and marketing services to car dealerships.  FAC |
| 5 | ¶ 12.  Plaintiff claims Towbin hired CDK to perform marketing |
| 6 | services on its behalf.  See FAC ¶ 12.  Plaintiff allegedly |
| 7 | received three autodialed calls and one text message from |
| 8 | Defendants after they obtained his contact information from |
| 9 | Cars.com.  FAC ¶¶ 24-33.  As a result, Plaintiff brought this |
| 10 | action on behalf of himself and those similarly situated, under |
| 11 | the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, |
| 12 | FAC ¶ 37, which prohibits sending unsolicited, autodialed text |
| 13 | messages and calls to cellular telephones.  Id. |
| 14 | § 227(b)(1)(A)(iii).  Defendants then brought this Motion to |
| 15 | Dismiss for Improper Venue and, in the alternative, Motion to |
| 16 | Change to Venue to the District of Nevada.  Towbin's Mot. 1-2; |
| 17 | CDK's Mot. 1. |
| 18 | II.   OPINION |
| 19 | A.   Proper Venue |
| 20 | 1.   Legal Standard |
| 21 | A civil action may be brought in: (1) a judicial district |
| 22 | in which any defendant resides, if all defendants are residents |
| 23 | of the State in which the district is located; or (2) a judicial |
| 24 | district in which a substantial part of the events or omissions |
| 25 | giving rise to the claim occurred.  28 U.S.C. § 1391(b).  In |
| 26 | determining a 12(b)(3) motion to dismiss for improper venue, the |
| 27 | court must draw all reasonable inferences in favor of the non- |
| 28 | moving party.  Murphy v. Schneider National, Inc., 362 F.3d |

1    1133, 1138 (9th Cir. 2004).

2              2.   Analysis

3         The parties agree venue is not proper in the Eastern

4    District of California under § 1391(b)(1), as neither Defendant

5    is a resident of California.  See FAC ¶¶ 7-10; Towbin's Mot. 1;

6    CDK's Mot. 1.  The parties do dispute, however, whether venue is

7    proper in the Eastern District under § 1391(b)(2), that is,

8    whether a substantial part of the events or omissions giving

9    rise to Plaintiff's claim occurred here.  See FAC ¶ 9; Towbin's

10   Mot. 4-5; CDK's Mot. 2.

11        First, Defendants argue that venue is not proper in the

12   Eastern District because Plaintiff did not clearly allege that

13   he received the communications in this district.  Towbin's Mot.

14   4; CDK's Mot. 2.  In his complaint, Plaintiff states that venue

15   is proper here because "Plaintiff resides in this District, and

16   because the wrongful conduct giving rise to this case was

17   directed to Plaintiff on Plaintiff's California area code cell

18   phone number in this District."  FAC ¶ 10 (emphasis added).

19   While the Court agrees that Plaintiff's allegations are not

20   entirely clear, the Court must draw all reasonable inferences in

21   favor of the Plaintiff.  As such, the fact that Plaintiff

22   resides in this district and received the calls to his cell

23   phone here, suggests that he was in this district when he

24   received the alleged communications from Defendants.  See FAC

25   ¶ 10.  Thus, the Court finds that Plaintiff has alleged he

26   received the communications in this district.

27        Second, Defendants argue that even if Plaintiff did receive

28   the alleged communications in the Eastern District, that would

                                   3

1   not support venue under § 1391(b)(2), as the receipt of the
2   communications is not a substantial part of the events giving
3   rise to his TCPA claim.  Towbin's Mot. 5-6; CDK's Mot. 2.
4   Defendants argue that because the TCPA only prohibits persons
5   from sending autodialed communication and does not make illegal
6   the receipt of autodialed communication, the events giving rise
7   to Plaintiff's claim arose in Nevada, where the alleged
8   communications were sent.  Towbin's Mot. 5.  To support this
9   argument Defendants cite to numerous cases involving TCPA claims
10  where venue was found to be proper in the district in which the
11  communications were sent.  Towbin's Mot. 5-6; CDK's Mot. 2.

12      However, just because a substantial part of the events
13  occurred in Nevada "does not mean that a substantial part of the
14  events did not also take place in California where the phone
15  call was directed and where the harm was inflicted."
16  Schlesinger v. Collins, No. 19-CV-03483-EMC, 2019 WL 4674396, at
17  *3 (N.D. Cal. Sept. 25, 2019); see also S.F. Residence Club,
18  Inc. v. Leader Bulso & Nolan, PLC, No. C-13-0844 EMC, 2013 WL
19  2050884, at *5 (N.D. Cal. May 14, 2013) (noting that there may
20  be more than one district in which a substantial part of the
21  events giving rise to the claim occurred, and that venue would
22  be proper in each district).  Courts in TCPA cases have
23  consistently found venue to be proper under § 1391(b)(2) where
24  the call was received.  See Schlesinger, at *3; see also Schick
25  v. Resolute Bank, No. CV-19-02218-PHC-DLR, 2019 WL 8014435, at
26  *1 (D. Ariz. Nov. 13 2019); Sapan v. Dynamic Network Factory,
27  Inc., No. 13-CV-1966-MMA (WVG), 2013 WL 12094829, at *3 (S.D.
28  Cal. Nov. 25, 2013).  Because Plaintiff's injury, receipt of the

4

1   communications, occurred in the Eastern District, a substantial
2   part of the events giving rise to his claim occurred here.  As
3   such, venue is proper in the Eastern District of California.
4        B.   Transfer
5             1.   Legal Standard
6        "For the convenience of parties and witnesses, in the
7   interest of justice, a district court may transfer any civil
8   action to any other district or division where it might have
9   been brought." 28 U.S.C. § 1404(a).  When determining whether
10  transfer is proper, courts employ a two-step analysis.  Park v.
11  Dole Fresh Vegetables Inc., 964 F. Supp. 2d 1088, 1093 (N.D.
12  Cal. 2013).  First, the court must determine whether the case
13  could have been brought in the forum the moving party seeks to
14  transfer the case to.  Id.
15       If the moving party makes this showing then the district
16  court has discretion to change venue based on "individualized,
17  case-by-case consideration of convenience and fairness."  Id.
18  (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29
19  (1988)).  Under § 1404(a) the court should consider the
20  convenience of the parties and witnesses.  28 U.S.C. § 1404(a).
21  The court may also consider factors such as: (1) the location
22  where the relevant agreements were negotiated and executed,
23  (2) the state that is most familiar with the governing law,
24  (3) the plaintiff's choice of forum, (4) the respective parties'
25  contacts with the forum, (5) the contacts relating to the
26  plaintiff's cause of action in the chosen forum, (6) the
27  differences in the costs of litigation in the two forums,
28  (7) the availability of compulsory process to compel attendance

1    of unwilling non-party witnesses, and (8) the ease of access to

2    sources of proof.  Jones v. GNC Franchising, Inc., 211 F.3d 495,

3    499 (9th Cir. 2000).

4              2.   Analysis

5         Plaintiff does not dispute that this action could have been

6    brought in Nevada.  See Opp'n 4.  Towbin operates in Nevada, it

7    is where the contract between Defendants was executed, and where

8    any communications from Towbin originated.  Towbin's Mot. 5.

9    Accordingly, venue is proper in the District of Nevada.  See 28

10   U.S.C. 1391(b)(2).  Moreover, as set forth below, upon weighing

11   the relevant factors, the Court finds that the interests of

12   convenience and fairness warrant transfer to the District of

13   Nevada.

14              a.   Factors Weighing in Favor of Transfer

15        Several factors support transferring this case to Nevada.

16   First, transfer to Nevada will be more convenient for the

17   witnesses, often considered the most important factor when

18   deciding a motion to transfer.  Jovel v. i-Health, Inc., No. CV

19   12-05526 DDP (JCGx), 2012 WL 5470057, at *4 (C.D. Cal. Nov. 8,

20   2012).  Defendants contend that most of the witnesses are likely

21   to be Towbin employees.  See Towbin's Mot. 10.  While Defendants

22   do not specifically identify any critical witnesses, given that

23   Plaintiff's complaint is that he received solicitation from

24   Towbin, it seems likely that many relevant witnesses will be

25   Towbin employees based in Nevada where Towbin operates.

26   Plaintiff on the other hand, does not claim the Eastern District

27   is convenient for any other witness besides himself.  See Opp'n

28   4-5.  Additionally, because Towbin's business is based in

                              6

1   Henderson, Nevada, it is likely the district court in Nevada
2   will have subpoena power to compel testimony from any former
3   employee, while this court will not.  See Fed. R. Civ. P.
4   45(c)(1)(A) ("A subpoena may command a person to attend trial,
5   hearing, or deposition . . . within 100 miles of where the
6   person, resides, is employed, or regularly transacts business in
7   person.").

8       Second, litigation costs will likely be reduced in Nevada.
9   Defendants argue that most of the documentary evidence relevant
10  to this case is maintained at Towbin's dealership in Henderson.
11  Towbin's Mot. 11.  Plaintiff does not appear to dispute this but
12  instead argues that the physical location of the documents no
13  longer carries much weight given technology has made it easier
14  for documents to be transferred to different locations.  Opp'n
15  5.  While, "developments in electronic conveyance have reduced
16  the cost of document transfer somewhat, costs of litigation can
17  still be substantially lessened if the venue is in the district
18  in which most of the documentary evidence is stored."  Park, 964
19  F. Supp. 2d at 1095.  Further, litigation costs are usually
20  reduced when the venue is located near the most witnesses
21  expected to testify.  Id.  Because most of the documentary
22  evidence and most of the witnesses are in Nevada, the Court
23  finds litigation will be less costly there.

24      Third, Nevada has the most contacts relating to Plaintiff's
25  cause of action.  The only contacts related to the cause of
26  action in the Eastern District, are that Plaintiff is a resident
27  of this district and allegedly received the communications here.
28  See generally Compl.  Given that this is a putative class

1    action, similar contacts might be found across the country.

2    However, all these communications will have come from Towbin,

3    located in Nevada, or from CDK, on Towbin's behalf.  Towbin's

4    Mot. 5-6.  Further, Towbin's marketing decisions and execution

5    of the service contract with CDK occurred at its place of

6    business in Nevada.  Towbin's Mot. 7-10.

7                 b.  <u>Factors Weighing Against Transfer</u>

8       The one factor weighing against transfer is the plaintiff's

9    choice of forum.  Great weight is generally accorded to the

10    forum of plaintiff's choosing.  <u>Lou v. Belzberg</u>, 834 F.2d 730,

11    739 (9th Cir. 1987).  However, when an individual represents a

12    class, the named plaintiff's choice of forum is given less

13    weight.  <u>Id.</u>

14       Here, Plaintiff has chosen to litigate in his home

15    district, the Eastern District of California, which weighs

16    against transfer.  <u>See</u> FAC ¶ 10.  Additionally, litigating in

17    Nevada would be less convenient for Plaintiff than litigating in

18    his home state.  Opp'n 5.  However, because Plaintiff has chosen

19    to represent a class, his choice of forum, and its convenience

20    for him, is given less weight. <u>See LaGuardia v. Designer Brands</u>,

21    Inc., No. 19CV1568 JM(BLM), 2020 WL 2463385, at *8 (S.D. Cal.

22    May 7, 2020) (noting that TCPA class actions are normally

23    attorney driven and require limited participation from the named

24    plaintiff).  Potential class plaintiffs may come from all over

25    the country and plaintiff "provides no indication that any class

26    members other than himself would not also have to travel

27    hundreds of miles to litigate" in the Eastern District.  <u>Mina v.</u>

28    <u>Red Robin Int'l</u>, Inc., No. CV189472PSGGJSX, 2020 WL 4037163, at

1   *3 (C.D. Cal. Mar. 3, 2020).

2      Thus, ultimately, this factor does not weigh heavily

3 against transfer.

4                  c.   <u>Neutral Factors</u>

5      Finally, a few factors neither weigh in favor of or against

6 transfer of venue.  For instance, the parties both have limited

7 contacts with the other's respective forum choice.  Plaintiff's

8 contact with the Eastern District is great, as it is where he

9 resides.  <u>See</u> FAC ¶ 10.  Plaintiff does not appear to have any

10 contacts with Nevada other than the alleged communication with

11 Defendants.  <u>See generally</u> FAC.  Defendants, on the other hand,

12 have greater contacts with Nevada and their only alleged

13 contacts with the Eastern District are their communications with

14 Plaintiff.  <u>Id.</u>  Towbin has significant contacts with Nevada, as

15 it is where it operates its business.  <u>See</u> FAC ¶ 11.  CDK also

16 has contacts with Nevada as it is where it provided services to

17 its client, Towbin.  CDK's Mot. 3.  In addition, the TCPA is a

18 federal law, which both districts are equally familiar with.

19 <u>Pierucci v. Homes.com Inc.</u>, No. CV-20-08048-PCT-DWL, 2020 WL

20 5439534, at *5 (D. Az. Sept. 10, 2020).

21                  d.   <u>Conclusion</u>

22      Weighing the relevant factors, the Court finds, on balance,

23 that transfer to the District of Nevada is more convenient to

24 the parties and witnesses in this case.  Thus, the Court

25 transfers this case to the District of Nevada under 28 U.S.C.

26 § 1404(a).

27                 III.   ORDER

28      For the reasons set forth above, the Court DENIES

1 | Defendants' Motion to Dismiss and GRANTS Defendants' Motion to

2 | for Transfer to the District of Nevada.

3 |    IT IS SO ORDERED.

4 | Dated: November 18, 2020

5 |

6 | JOHN A. MENDEZ,
    UNITED STATES DISTRICT JUDGE

7 |

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |